UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUSANNE INGRID C.,

                Plaintiff,

    -v-

MICHELLE KING, ACTING COMMISSIONER
OF SOCIAL SECURITY,[1]

                Defendant.

CIVIL ACTION NO. 23 Civ. 11261 (LJL) (RFT)

**REPORT AND RECOMMENDATION**

TO THE HONORABLE LEWIS J. LIMAN, UNITED STATES DISTRICT JUDGE:

Plaintiff Susanne Ingrid C. seeks judicial review of a final determination by Defendant Michelle King, Acting Commissioner (the "Commissioner") of the Social Security Administration (the "SSA"), denying her application for benefits under the Social Security Act (the "Act"). (*See* ECF 9, Pl.'s Br. at 2.)[2] Plaintiff seeks to vacate the Commissioner's decision and remand for further administrative proceedings. (*See id.*) Having carefully reviewed the administrative record (the "Record") and the submissions of the parties, and for the reasons set forth below, I respectfully recommend that Plaintiff's motion should be GRANTED and that this matter should be remanded for further proceedings.

---

[1]      Michelle King is the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the defendant in this action.

[2]      To protect Plaintiff's privacy, she is identified by her first and middle names and last initial.

**BACKGROUND**

I.      **Procedural History**

Plaintiff filed a claim for Supplemental Security Income ("SSI") on August 12, 2021. (*See* R. at 10, 117-19.)[3] She alleged disability beginning on December 2, 2018. (*See id.* at 10, 117.) Her claims were denied first on December 9, 2021, and then on reconsideration on March 16, 2022. (*See id.* at 126, 135.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 9, 2022, by ALJ Ifeoma N. Iwuamadi via telephone due to the pandemic. (*See id.* at 171-76, 223-24.) The ALJ issued a decision dated December 22, 2022, finding that Plaintiff was not disabled and denying her SSI application. (*See id.* at 7-9.) Plaintiff asked for review of the ALJ's decision on January 6, 2023, and the Appeals Council denied the request on November 6, 2023. (*See id.* at 1-3, 238-40.) She now appeals the agency's final decision.

II.     **Administrative Record**

        A.      Plaintiff's Background and Symptoms

Plaintiff was born in 1972 and was 46 years old at the time she allegedly became disabled. (*See id.* at 24, 59, 117.) She has a degree in psychology from Boston University. (*See id.* at 59.) At the time of her hearing, Plaintiff had not worked since August 12, 2021. (*See id.* at 12.) Plaintiff had previously worked as a consultant in marketing, promotions, and public relations. (*See id.* at 16.) In the disability report completed with her SSI application, she alleged disability

---

[3]      Citations to "R." are to the administrative record, and the page citations are to the numbers in the lower right corner of each page and not to the numbers at the top of the page that are part of the ECF numbering system.

beginning on December 2, 2018, due to anxiety disorder, depression, bipolar disorder, back problems, and headaches. (*See id.* at 98.)

      B.   <u>Medical Evidence</u>

      Plaintiff's alleged onset date is December 2, 2018. (*See id*. at 82.) The earliest medical records in the Record date from 2020. Beginning in 2020, Plaintiff saw at least nine different doctors, including treating physicians, a consultative examiner, a psychological consultant, a medical consultant, psychotherapists, and a psychiatrist. (*See id.* at 323-24, 332, 343, 347, 353-54, 362, 370, 372, 429, 466-68.) She received therapy and psychotherapy weekly for approximately five months between August 30, 2021 and January 2022. (*See id.* at 353, 380, 418-19.) Plaintiff was treated with various prescription medications, including: Abilify for mood stabilization, Vistaril for anxiety, Prilosec for gastroesophageal reflux disease, and Imitrex for headaches. (*See id.* at 353.)[4]

---

[4]     Abilify is a brand-name formulation of aripiprazole, a drug that is prescribed for, among other conditions, "episodes of mania or mixed episodes (symptoms of mania and depression that happen together) in adults, teenagers, and [some] children . . . with bipolar disorder (manic-depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods)." *See Aripiprazole*, U.S. NATIONAL LIBRARY OF MEDICINE: MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a603012.html (last visited Jan. 21, 2025). Prilosec, a brand-name formulation of omeprazole, is used alone or with other medications to treat the symptoms of gastroesophageal reflux disease ("GERD") and certain ulcers. *See Omeprazole*, https://medlineplus.gov/druginfo/meds/a693050.html U.S. NATIONAL LIBRARY OF MEDICINE: MEDLINE PLUS (last visited Jan. 21, 2025). Imitrex is a brand-name formulation of sumatriptan, which is used to treat the symptoms of migraine headaches. *See Sumatripan*, U.S. NATIONAL LIBRARY OF MEDICINE: MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a601116.html (last visited Jan. 21, 2025). Vistaril is also known as Hydroxyzine, which is indicated to help control anxiety and tension caused by nervous emotional conditions. *See Hydroxyzine (oral route),* MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/hydroxyzine-oral-route/description/drg-20311434 (last visited Jan. 15, 2025).

1.  Treatment History

   a.  *S&G Family Medical Office/Dr. Michael Guo, M.D.*

On September 22, 2020, Dr. Michael Guo, one of Plaintiff's treating physicians, evaluated Plaintiff for anxiety. On examination, Dr. Guo noted that Plaintiff presented without mood swings or memory loss. (*See id.* at 323, 428-29.) Dr. Guo diagnosed Plaintiff with generalized anxiety disorder, abnormal weight gain, and obesity. (*See id.* at 428-29.)

   b.  *Gouverneur Primary Care/Dr. Angelina M. Gomes, M.D.*

Plaintiff received treatment at Gouverneur Primary Care, primarily from Dr. Angelina Gomes, her treating physician, from February 1, 2021 through August 15, 2022. (*See id.* at 331-339, 379-87, 474-89, 469-471.)

In the visit record from March 10, 2021, Dr. Gomes indicated that Plaintiff's reason for her initial appointment was abdominal pain. (*See id.* at 332.) Dr. Gomes noted that it was difficult to elicit Plaintiff's specific symptoms due to pressured speech and tangential responses. (*See id.*) Dr. Gomes's impression was that the abdominal symptoms related to Plaintiff's stress levels. (*See id.* at 334.)

In the visit record from January 26, 2022, Dr. Gomes evaluated Plaintiff for anxiety, noting that Plaintiff was a "bit more tangential and circumferential today than at prior visit." (*Id.* at 379.) On August 15, 2022, Dr. Gomes completed a physical residual functional capacity assessment, noting a diagnosis of anxiety and chronic low back pain. (*Id.* at 470.) Dr. Gomes concluded that Plaintiff's mental health condition significantly limited her functional capacity and that Plaintiff had trouble with organization and concentration. (*See id.* at 471.) Dr. Gomes

prescribed Plaintiff with Abilify for mood stabilization, Vistaril to decrease anxiety, Prilosec for

GERD, and Imitrex for headaches. (*See id.*at 359.)

        *c.   Gouverneur Healthcare Services/Xinyi Wang, MSW, Ph.D Candidate.*

Xinyi Wang saw Plaintiff for weekly individual therapy sessions starting in August 2021 to

address anxiety and depression. (*See id.* at 353-54.) Progress notes taken by Therapist Wang

between November 23, 2021 and January 25, 2022 stated that Plaintiff was living with a great

amount of financial stress and experiencing physical health-related issues. (*See id.* at 380-94.)

Therapist Wang stated that Plaintiff presented with a great amount of anxiety, exhibiting

tangential speech. (*See id.* at 383.) Therapist Wang noted that Plaintiff needed further cognitive

assessment to support diagnosis and treatment planning but that Plaintiff had anxiety about

psychological testing. (*See id.*)

A January 10, 2022 treating source statement prepared by Therapist Wang stated that

Plaintiff had a complex history of psychiatric and medical issues. (*See id.* at 351-60.) Therapist

Wang opined that: the combination of impairments made it very difficult for Plaintiff to

function; Plaintiff often oscillated between depressive and anxiety episodes and that her

depressive symptoms included no-to-low motivation, low mood, loss of interest, avoidance and

withdrawal from social situations, and decreased grooming; Plaintiff's problems were severe

and that the cognitive issues were not likely to improve; and Plaintiff was disabled to the point

of meeting the requirements for SSI. (*See id.*)

        *d.   Gouverneur Healthcare Services/Erwin Ting, M.D.*

On July 8, 2022, Dr. Erwin Ting, Plaintiff's treating psychiatrist, conducted a mental

capacity assessment of Plaintiff, concluding that Plaintiff had a mixture of mild, moderate,

marked, and extreme limitations in her abilities to perform activities within the areas of understanding, remembering, or applying information; concentration, persistence, or maintaining pace; applying or managing oneself; and interacting with others. (*See id.* at 466-68.)

I set out his assessment of the most severe limitations. Regarding Plaintiff's ability to understand, remember, or apply information, Dr. Ting indicated that Plaintiff had a marked limitation in sequencing multi-step activities. (*See id.* at 466.) Regarding Plaintiff's ability to concentrate, persist, and maintain pace, Dr. Ting indicated that Plaintiff had an extreme limitation in her ability to work a full day without needing more than the allotted number or length of rest periods; and that she had marked limitations in ignoring distractions while working, working near others without interrupting or distracting them, and sustaining a routine and regular attendance at work. (*See id.* at 467.) Regarding Plaintiff's ability to adapt or manage herself, Dr. Ting indicated that Plaintiff had an extreme limitation in managing her psychological symptoms; and marked limitations in adapting to changes and making plans independently of others. (*See id.*) Regarding Plaintiff's ability to interact with others, Dr. Ting indicated that Plaintiff had a marked limitation in understanding and responding to social cues. (*See id.* at 468.)

### 2. Medical Opinion Evidence

#### a. Corey Anne Grassl, Psy.D., Consultative Examiner

On October 13, 2021, Dr. Grassl, an evaluating psychiatrist, met with Plaintiff over Zoom and opined that Plaintiff's demeanor was cooperative and that her manner of relating was adequate. (*See id.* at 344.) Dr. Grassl determined that there was no evidence of limitation in Plaintiff's ability to: understand, remember, or apply simple directions and instructions; use

reason and judgment to make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain concentration and perform a task at a consistent pace; maintain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and identify normal hazards and take appropriate precautions. (*See id.* at 345.) Dr. Grassl concluded that Plaintiff was mildly limited in her ability to regulate emotions, control behavior, and maintain well-being. Dr. Grassl also concluded that Plaintiff's attention and concentration and recent and remote memory skills were intact. (*See id.*) Dr. Grassl stated that Plaintiff's difficulties were caused by psychiatric problems, that the examination results appeared to be consistent with psychiatric problems, but that the psychiatric problems standing alone did not appear to be significant enough to interfere with Plaintiff's ability to function. (*See id.*)

### b. T. Inman, Ph.D., Psychological Consultant

On December 2, 2021, Dr. Inman, a psychological consultant, assessed Plaintiff's medically determinable impairments and severity by reviewing Dr. Grassl's psychiatric evaluation (*see id.* at 83), unspecified medical records or treatment notes from Gouverneur Healthcare Services (*see id.* at 84), and Dr. Guo's treatment notes (*see id.* at 85). Dr. Inman, who did not meet with Plaintiff, found two medical impairments: severe anxiety and obsessive-compulsive disorder; and non-severe depressive, bipolar, and related disorders. (*See id.* at 87-88.) Dr. Inman conducted a residual functional capacity assessment and concluded that, "given the totality of the evidence, [Plaintiff] would be able to perform unskilled work on a sustained basis." (*Id.* at 93.) Dr. Inman opined that Plaintiff had no limitations in understanding, remembering, or applying information; moderate limitations interacting with others; mild

limitations concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing herself. (*See id.* at 89-92.)

### c.  Ram Ravi, M.D., Consultative Examiner

On March 11, 2022, Dr. Ram Ravi, a consultative doctor of occupational medicine, opined that Plaintiff had no limitations sitting or standing and moderate limitations bending, pushing, pulling, lifting, and carrying. (*See id.* at 365.) On examination, Dr. Ravi noted that Plaintiff had an elevated blood pressure, palpitations, a headache, dizziness, and lightheadedness. (*See id.*) He instructed her to go to the hospital by ambulance immediately for further evaluation. (*See id.* at 365-67.)

### d.  M. Juriga, M.D., Psychological Consultant

On March 15, 2022, Dr. Juriga, a psychological consultant, assessed at the reconsideration level Plaintiff's medically determinable impairments and severity. In addition to the records reviewed by Dr. Inman (*see id.* at 101-03), Dr. Juriga reviewed Dr. Ravi's consultative examination (*see id.* at 100) and medical records from Gouverneur Health Care post-dating Dr. Inman's consultation (*see id.* at 101). Dr. Juriga, who did not meet with Plaintiff, affirmed Dr. Inman's findings. (*See id.* at 105-12, 371-72.) Dr. Juriga found three medical impairments: non-severe osteoarthrosis and related disorders; severe anxiety and obsessive-compulsive disorders; and non-severe depressive, bipolar, and related disorders. (*See id.*) Dr. Juriga concluded that Plaintiff had no limitations understanding, remembering, or applying information; moderate limitations when interacting with others; mild limitations when concentrating, persisting, or maintaining pace; and mild limitations when adapting or managing herself. (*See id.*)

### e.  S. Putcha, M.D., Medical Consultant

At the reconsideration level, on March 15, 2022, Dr. Putcha, a medical consultant, evaluated Plaintiff. (*See id.* at 104-05, 369-70.) Dr. Putcha opined that Plaintiff's physical impairments would cause no more than mild limitations in Plaintiff's ability to function and therefore classified her impairments as non-severe. (*See id*.)

### C.    The ALJ Hearing

On September 9, 2022, Plaintiff appeared telephonically with counsel before the ALJ. (*See id.* at 10.) At the time of the hearing, Plaintiff lived alone in a rented room in an apartment. (*See id.* at 14.) Plaintiff testified that the death of her mother, best friend, and partner occurred in July 2016, July 2017, and February 2019, respectively. (*See id.* at 71-72.)

Plaintiff testified that she requires breaks after walking a half to two blocks. (*See id.* at 63.) She estimated needing to take a break after five to ten minutes of standing or sitting. (*See id*.) She said she is unable to lift or carry anything. (*See id*.) She indicated that she takes medications for depression and anxiety, including Sumatriptan, Amitriptyline, and Hydroxyzine,[5] and that she has episodes of total euphoria and then extreme depression, which affect her daily activities, three or four times a week (*See id.* at 61-62, 64, 69.)

A vocational expert ("VE") appeared at the administrative hearing and offered testimony regarding Plaintiff's ability to perform jobs available in significant numbers in the national economy. (*See id.* at 74.) The VE testified that Plaintiff had worked as a public relations

---

[5]    Amitriptyline is a tricyclic antidepressant. *See generally Hydroxyzine*, U.S. NATIONAL LIBRARY OF MEDICINE: MEDLINE PLUS, https://medlineplus.gov/druginfo/meds/a682388.html (last visited Jan. 13, 2025).

representative, Dictionary of Occupational Titles ("DOT") No. 165.167-014, which is generally a skilled job with a sedentary exertional level. (*See id.*). The VE testified that a hypothetical person of Plaintiff's age, education, and past job experience who was limited to medium levels of exertion could not be a public relations representative. (*See id.* at 75.)

The ALJ asked if there were jobs available in the national economy that could be performed by a person limited to performing "simple work-related decisions" and medium levels of exertion. (*See id.*) The VE testified that the individual could perform work as a hand packer, DOT No. 920.587-018, hospital cleaner, DOT No. 323.687-010, or laundry worker, DOT No. 361.685-018, all of which involve unskilled medium work. (*See id.* at 76.) When the ALJ further limited the hypothetical claimant to unskilled light work with the same limitations, the VE said that the hypothetical individual could perform work as a finishing machine operator, DOT No. 649.686-022, bagger, DOT No. 920.687-018, or racker, DOT 735.687-026. (*See id.* at 76-77.) The VE also testified that an individual who would be off task 15% of the workday would not be able to sustain employment in the national economy. (*See id.* at 77-78.) In response to questioning by Plaintiff's counsel, the VE testified that if the hypothetical individual were absent beyond one day a month, especially on a month-to-month or recurrent basis, the individual would be unable to maintain employment. (*See id.*)

**DISCUSSION**

I.    **Legal Standards**

    A.    <u>Legal Principles Governing Judicial Review of the Commissioner's Decision</u>

A district court may affirm, modify, or reverse (with or without remand) a final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Skrodzki v. Comm'r of Soc. Sec.*, 693 F. App'x 29, 29 (2d Cir. 2017). The inquiry is "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004).[6]

"Failure to apply the correct legal standard constitutes reversible error . . . ." *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). In "certain circumstances, failure to adhere to the applicable regulations" counts as a failure to apply the correct legal standard and therefore is reversible error. *Douglass*, 496 F. App'x at 156 (quoting *Kohler*, 546 F.3d at 265). Courts review de novo whether the ALJ's legal conclusions were based on the correct legal principles. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (reversing where the ALJ's decision "was not in conformity with the regulations promulgated under the Social Security Act").

If a court concludes that the ALJ used the correct legal standards, the court must then "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569

---

[6]    Unless indicated otherwise, this report and recommendation omits internal quotation marks, citations, and emphases.

F.3d 108, 112 (2d Cir. 2009)). The substantial evidence standard is quite deferential: "once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. If the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982). A court "may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

However, a court may not defer to a determination by the ALJ if it is the product of legal error, including a failure to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based," 42 U.S.C. § 405(b)(1). While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability. *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (awarding legal fees when the ALJ had ignored or mischaracterized evidence); *Kohler*, 546 F.3d at 268-69 (holding that remand was appropriate when the ALJ had overlooked and mischaracterized evidence); *Ruiz v. Barnhart*, No. 01-CV-1120 (DC), 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (remanding when the ALJ had ignored evidence). Therefore, in assessing whether there is substantial evidence to support the ALJ's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013).

When "the ALJ has applied an improper legal standard," or when there is not substantial

evidence to support the ALJ's determination, the reviewing court may remand to the ALJ to

develop the record. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

      B.      <u>Legal Principles Guiding the Commissioner's Determination of Disability</u>

Under the Act, a person who has a disability and is insured for disability benefits is

entitled to disability benefits. *See* 42 U.S.C. §§ 423(a)(1)(A); 20 C.F.R. §§ 404.101, 404.120,

404.315(a). The Act defines disability as an "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's impairments must be "of such

severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether impairments meet the statutory definition of disability, the ALJ

"must make a thorough inquiry into the claimant's condition and must be mindful that the

Social Security Act is a remedial statute, to be broadly construed and liberally applied."

*Mongeur*, 722 F.2d at 1037. Accordingly, the ALJ's decision must consider factors such as: "(1)

the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective

evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience." *Id.*

1.    Five-Step Inquiry

The Commissioner must conduct a five-step inquiry to determine whether an individual is disabled and therefore entitled to disability benefits. *See* 20 C.F.R. § 404.1520(a)(1). First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (b). If so, the claimant is ineligible for benefits and the inquiry ends.

If the claimant is not engaged in any such activity, the Commissioner moves on to the second step and must determine whether the claimant has a severe impairment, which is an impairment or combination of impairments that significantly limits his ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). If the claimant does not have an impairment or combination of impairments that are severe, the claimant is not entitled to benefits and the inquiry ends.

If the claimant has a severe impairment or combination of impairments, the Commissioner continues to step three and must determine whether the impairment or combination of impairments is, or medically equals, one of the impairments included in the "listings" of qualifying disabilities contained at 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. If the claimant's impairment or impairments meet or medically equal one of those listings, the Commissioner presumes the claimant is disabled, and the claimant will be eligible for benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

If the claimant does not meet the criteria for being presumed disabled, the Commissioner continues to the fourth step and must assess the claimant's residual functional capacity ("RFC"), which is the ability to perform work activities on a sustained basis despite her

14

impairments. The Commissioner then determines whether the claimant possesses the RFC to perform the claimant's past work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), (h). If so, the claimant is not eligible for benefits and the inquiry ends.

If the claimant is not capable of performing her prior work, the Commissioner must continue to step five and determine whether the claimant can perform other available work. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), (g), (h). If the claimant, as limited by her RFC, can perform other available work, the claimant is not entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (v).

The claimant bears the burden of proof for the first four steps. *See Selian,* 708 F.3d at 418. If the claimant shows that she is unable to perform her past work, the Commissioner bears the burden of showing at the fifth step that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater,* 142 F.3d 75, 80 (2d Cir. 1998); 20 C.F.R.§§ 404.1520(a)(4)(iv), (v).

### 2.  Evaluating Psychiatric Conditions

When a claimant alleges mental impairments, the regulations mandate a "'special technique,'" the Psychiatric Review Technique ("PRT"), "at the second and third steps of the five-step framework." *Kohler*, 546 F.3d at 265-66; *see also* 20 C.F.R. § 416.920a(a). The PRT requires the Commissioner to follow a two-step process. The Commissioner must first determine whether the claimant has a medically determinable mental impairment: a claimant has such an impairment when she meets the medical criteria (generally, the symptoms) of a mental impairment, as set forth in the "Paragraph A Criteria." 20 C.F.R. Pt. 404, Subpt. P, app. 1(12.00)(A)(2)(a); *see also* 20 C.F.R. § 404.1521. If the claimant has such an impairment, the

Commissioner must determine whether the claimant's impairment or combination of impairments are comparably severe to listed mental impairments. *See* 20 C.F.R. § 404.1521a. To do so, the Commissioner determines if the claimant's impairments or combination of impairments meet the functional limitations set forth in the "Paragraph B Criteria" and/or, if applicable, the "Paragraph C Criteria," *id.,* by "rat[ing] the degree of functional limitation resulting from the impairment(s)" in "four broad functional areas" and then comparing the severity of the impairments to the impairments caused by listed mental impairments. *Kohler*, 546 F.3d at 265-66 (quoting 20 C.F.R. § 404.1520a(b)(2)); *see also* 20 C.F.R. Pt. 404, Subpt. P, app. 1(12.00)(A)(2)(b), (c)). The broad functional areas are the ability to: (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3); *see also* 20 C.F.R. Pt. 404, Subpt. P, app. 1(12.00)(A)(2)(b). Limitations in these areas are measured on a five-level scale: none, mild, moderate, marked, and extreme, with "extreme" referring to "a degree of limitation that is incompatible with the ability to do any gainful activity," and "marked" meaning that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, app. 1(12.00)(A)(2)(b); *see also* 20 C.F.R. § 416.920a(c)(4). A severe psychiatric impairment that "functionally equal[s]" conditions in the listings is one that "result[s] in marked limitations in two domains of functioning or an extreme limitation in one domain." 20 C.F.R. § 416.925(b)(2)(ii).

The Second Circuit has held that it is error for an ALJ to fail to incorporate limitations in concentration, persistence, and pace in the hypothetical presented to the VE. *See McIntyre v. Colvin*, 758 F.3d 146, 151-52 (2d Cir. 2014). However, "[a]n ALJ's omission from a hypothetical of

any explicit reference to a claimant's limitation in concentration, persistence, and pace should be found harmless where (1) the medical evidence demonstrates that the claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, and the challenged hypothetical is limited to only unskilled work; or (2) the hypothetical otherwise implicitly accounts for the claimant's limitations." *Stellmaszyk v. Berryhill*, No. 16-CV-9609 (DF), 2018 WL 4997515, at *27 (S.D.N.Y. Sept. 28, 2018).

### 3.   Evaluation of Medical Opinion Evidence

ALJs must evaluate the medical opinion evidence. *See Rodriguez v. Colvin*, No. 12-CV-3931 (RJS) (RLE), 2014 WL 5038410, at *17 (S.D.N.Y. Sept. 29, 2014). Until 2017, regulations required application of the "treating physician rule," which provided that the opinion of a claimant's treating physician presumptively was entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). For claims filed prior to March 27, 2017, if the ALJ decided not to give controlling weight to a treating physician's opinion, the ALJ had to determine how much weight, if any, to give that opinion. *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). In doing so, the ALJ had to "explicitly consider" the following, non-exclusive "*Burgess* factors": "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian*, 708 F.3d at 418. Failure to apply the *Burgess* factors constituted procedural error, but a reviewing court would not reverse the Commissioner's decision if the Commissioner gave "good reasons" for the weight assigned to the treating doctor's opinion. *Estrella*, 925 F.3d at 96. When determining the weight to give the opinions of non-treating physicians, an ALJ

17

applying the earlier regulations also had to consider the *Burgess* factors. *See* 20 C.F.R. § 404.1527(c); *see also Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9-10 (S.D.N.Y. Jan. 29, 2021) (discussing the application of *Burgess* and collecting cases), *report and recommendation adopted,* 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

The regulations set forth in 20 C.F.R. § 404.1520c apply to claims filed on or after March 27, 2017. Under these regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight. Instead, all medical opinions are evaluated for their persuasiveness. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources"). "Although the new regulations eliminate the perceived hierarchy of medical sources . . . the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Amber H. v. Saul*, No. 20-CV-490 (ATB), 2021 WL 2076219, at *4 (N.D.N.Y. May 24, 2021) (quoting 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1)) (alterations in original).

These regulations place the most significance for the persuasiveness assessment on the extent to which a physician's opinion is supported by well-accepted medical evidence and consistent with the rest of the record. *See* 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions . . . are supportability . . . and consistency."). "[S]upportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion," *Aponte v. Kijakazi*, 692 F. Supp. 3d 257, 265

(S.D.N.Y. 2023), whereas "consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record[.]" *Id.*

Beyond merely considering the supportability and consistency of medical source opinions, the ALJ must explain how he analyzed those factors. *See* 20 C.F.R. § 404.1520c(b)(2); *Vellone v. Saul*, No. 20-CV-0261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("[I]n cases where the new regulations apply, an ALJ *must* explain his/her approach with respect to the first two factors when considering a medical opinion") (emphasis in original), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). In most instances, the ALJ may, but is not required to, discuss the other *Burgess* factors (relationship with the claimant, specialization, and other relevant factors). *See* 20 C.F.R. § 404.1520c(b)(2).

Under the current regulations, an ALJ's failure to properly consider and apply the consistency and supportability factors may be a basis for remand. *See, e.g., Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020) (remanding so that the ALJ could "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiner's opinions"), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *Andrew G. v. Comm'r of Soc. Sec.*, No. 19-CV-0942 (ML), 2020 WL 5848776, at *5-9 (N.D.N.Y. Oct. 1, 2020) (remanding due to the ALJ's failure to adequately explain the supportability or consistency factors that led to the decision); *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). A court need not remand the case if the ALJ committed only harmless error, such that the "application of the correct legal principles to the record could lead only to the same conclusion." *Zabala*, 595 F.3d at 409.

As Plaintiff's application post-dates March 27, 2017, the Court must apply the revised regulations on evaluating medical opinions.

### 4.  Evaluating Plaintiff's Credibility

SSA regulations provide that statements of subjective pain and other symptoms, standing alone, cannot establish disability. *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(a)). The ALJ must follow a two-step framework for evaluating allegations of pain and other symptoms. *See Genier*, 595 F.3d at 49. The ALJ first considers whether the claimant suffers from a "medically determinable impairment that could reasonably be expected to produce" the alleged symptoms. *Id.* (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Genier*, 595 F.3d at 49 (citing 20 C.F.R. § 404.1529(a)). Among the additional kinds of evidence that an ALJ must consider in addition to objective medical evidence are the "individual's daily activities"; the frequency and intensity of the pain; the type and effectiveness of any medication the individual takes to alleviate pain; other treatments the individual has received for relief of pain; and any other measures the individual uses to relieve pain, such as lying down. *See Pena v. Astrue*, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *11 (S.D.N.Y. Dec. 3, 2008).

If the ALJ's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain. *See McLaughlin v. Sec'y of Health, Educ. & Welfare,* 612 F.2d 701, 704 (2d Cir. 1980). However, "[t]he Second Circuit has held that where an ALJ rejects witness testimony as not credible, the basis for the finding "must

. . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Pena*, 2008 WL 5111317, at *10 (quoting *Williams v. Bowen,* 859 F.2d 255, 260-61 (2d Cir. 1988)).

### 5.    The ALJ's Duty To Develop the Administrative Record

Disability-benefits proceedings are non-adversarial, and so the ALJ has an affirmative obligation to develop a complete administrative record, even if the claimant is represented by counsel. *See Lamay v. Astrue*, 562 F.3d 503, 508-09 (2d Cir. 2009). Whether the ALJ discharged this duty "is a threshold issue." *Romero v. Comm'r of Soc. Sec.*, No. 18-CV-10248 (KHP), 2020 WL 3412936, at *12 (S.D.N.Y. June 22, 2020).

"[T]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." *Rosario,* 2022 WL 819810, at *6 (S.D.N.Y. Mar. 18, 2022). "If a gap exists in the administrative record[,] then the plaintiff has not been afforded a full and fair hearing and the ALJ has failed in his or her duty to develop the administrative record." *Dufresne v. Astrue*, No. 12-CV-049 (MAD) (TWD), 2013 WL 1296376, at *5 (N.D.N.Y. Mar. 8, 2013) (citing *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir. 1980)), *report and recommendation adopted*, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013). Under those circumstances, a court will remand the case for further development of the evidence or for more specific findings. *See Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).

## II.    The ALJ's Decision

On December 22, 2022, in a 17-page decision, the ALJ found that Plaintiff was not disabled based on the application filed on August 12, 2021. (*See* R. at 10-26.) In rendering that decision, the ALJ applied the five-step sequential evaluation.

A.     <u>Step One</u>

At Step One of the five-step inquiry, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the application date of August 12, 2021 through the date of the opinion. (*See id.* at 12.)

B.     <u>Step Two</u>

At Step Two, the ALJ found that Plaintiff had the following severe impairments: generalized anxiety disorder, major depressive disorder, obesity, lumbar spine degeneration, headaches, GERD, irritable bowel syndrome ("IBS"), and fibromyalgia. (*See id.*)

C.     <u>Step Three</u>

At Step Three, after considering Plaintiff's impairments, the ALJ concluded that Plaintiff did not have "an impairment or combination of impairments" that equaled the severity of any listed impairment. (*See id.* at 12-15 (citing 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1).) In so doing, the ALJ analyzed the Paragraph B criteria of the listings related to Plaintiff's mental impairments, finding that Plaintiff did not suffer from at least one extreme or two marked limitations in the listed mental functional areas of remembering or applying information; interacting with others; adapting or managing oneself; and concentration, persistence, or maintaining pace. (*See id.* at 13-14.) Rather, the ALJ found that Plaintiff had no limitation in "understanding, remembering or applying information," taking into account that she "can follow written and spoken instructions very well" and that "her capacity to pay attention has improved and she finishes what she starts most of the time"; mild limitations in interacting with others and managing herself; and moderate limitation with regard to concentrating, persisting or maintaining pace. (*Id.* at 14.) The ALJ also concluded that Plaintiff did not meet the Paragraph C

criteria for mental impairments, given that she was "able to function outside her home and

[was] able to attend to all self-care tasks independently." (*Id.* at 15.)

      D.     <u>Determining Plaintiff's RFC and Step Four</u>

          1.  Analysis of Plaintiff's Report of Her Symptoms

Prior to Step Four, the ALJ determined Plaintiff's RFC, considering "all symptoms and the

extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence . . . [including] medical opinion(s) and prior administrative

medical finding(s) . . . ." (*Id.*) The ALJ found that Plaintiff's statements "about the intensity,

persistence, and limiting effects" of her symptoms were "inconsistent"; the ALJ then concluded

that although Plaintiff's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms," the stated "intensity, persistence, and limiting effects of their

symptoms" were "not entirely consistent" with the record evidence. (*Id.* at 17.) Based on the

treatment notes, the ALJ determined that although Plaintiff alleged significant symptoms and

limitations, "the record reveals claimant is independent in her activities of daily living including

driving, shopping, and managing her finances." (*Id.* at 24.)

          2.  Analysis of Plaintiff's Treating Physician Opinions

The ALJ next considered the assessments of the treating physicians, noting that the case

is mainly a psychiatric one and that Plaintiff's mental status examinations were within normal

limits. (*See id.*) The ALJ discussed the opinion of Dr. Guo, the treating physician who diagnosed

Plaintiff with generalized anxiety disorder; the ALJ concluded that Dr. Guo's findings were

unpersuasive. (*See id.* at 18-19.)

The ALJ found the opinion of Plaintiff's primary care physician, Dr. Gomes – that Plaintiff's mental health condition significantly limited her functional capacity, that Plaintiff had trouble with organization and concentration, and that Plaintiff would need to take a few unscheduled breaks during an eight-hour workday for five to ten minutes and would be absent from work more than four times per month (*see id.* at 471) – to be "unpersuasive." (*Id.* at 23.) The ALJ pointed out that Dr. Gomes had noted that Plaintiff's "impairments were not reasonably consistent with the symptoms and functional limitations described in the evaluation" (*id.*), although the ALJ did not mention that Dr. Gomes' explanation was that Plaintiff's mental health significantly limited her functional capacity and that Plaintiff had trouble with concentration (*see id.* at 471). The ALJ went on to conclude that Plaintiff would be able to handle "medium" work, because she had declined more aggressive pain management treatment and because her stomach symptoms were well controlled with medication. (*Id.* at 23-24.)

As to the opinion of Dr. Ting, Plaintiff's treating psychiatrist – that Plaintiff had extreme limitations in the ability to work a full day without needing more than the allotted number or length of rest periods and the ability to manage psychological symptoms; marked limitations in the ability to sequence multistep activities, the ability to ignore distractions while working and to sustain regular attendance at work, the ability to adapt to changes, and the ability to understand and respond to social cues; and moderate limitations in the ability to recognize and mistakes, to identify and solve problems, and to use judgment to make work-related decisions, and the ability to cooperate with others, ask for help, and handle conflicts (*see id.* at 466-68) – the ALJ concluded that the opinion was "unpersuasive." (*Id.* at 22-23.) The ALJ believed the opinion to be inconsistent with the underlying medical records. (*See id.*) In particular, the ALJ

pointed out that Plaintiff reported that she had a busy schedule and carried out the activities of daily living, including socializing and caring for her daily needs (including driving, shopping, and managing her finances); that her October 13, 2021 mental status examination was intact; that Plaintiff has never been hospitalized for her psychiatric condition; that the treatment notes mention medical improvements; and that psychiatric symptoms are stable with treatment. (*See id.* at 22-24.)

The ALJ similarly found the opinion of Therapist Wang, Plaintiff's treating psychotherapist since August 2021 – that Plaintiff's stress related to trying to work was "likely impacting her illness," that she was unable to work due to anxiety and depressive symptoms, and that "[h]er problems were quite severe" (*see id.* at 353-54, 357) – to be unpersuasive. (*Id.* at 21.) The ALJ stated that Therapist Wang's assessment was inconsistent with the underlying records, relying on the same considerations used to call Dr. Ting's opinion into question. (*See id.*)

### 3. Analysis of the Consulting Evaluations

The ALJ also assessed the consultative psychiatric evaluations and medical opinion evidence from October 13, 2021, through August 15, 2022. (*See id.* at 19-24.) Dr. Grassl, the state agency consultative examiner who met with Plaintiff once over Zoom and reviewed the Record as of October 13, 2021, determined that Plaintiff was "mildly limited in her ability to regulate emotions, control behavior, and maintain well-being" but that Plaintiff's psychiatric problems were not "significant enough to interfere with [her] ability to function on a daily basis." (*Id.* at 20.) The ALJ found the opinion to be "somewhat persuasive," because Plaintiff's mental status exam of record was "within normal limits," and therefore, "the record support[ed] no more than moderate limitations." (*Id.*)

The ALJ considered the opinion of T. Inman, a state agency psychological consultant, who did not meet with Plaintiff but reviewed the Record as of December 2, 2021, and who opined that Plaintiff would be able to perform unskilled work on a sustained basis (*see id.*). The ALJ noted that Dr. Inman had concluded that Plaintiff had "no limitations in her ability to understand, remember, or apply information, moderate limitations in her ability to interact with others, mild limitations in her ability to concentrate, persist, or maintain pace, and mild limitations in her ability to adopt or manage oneself." (*Id*.) On reconsideration on March 15, 2022, Dr. Juriga, another psychological consultant who reviewed the Record but did not meet with Plaintiff, agreed with Dr. Inman's opinion. (*See id.*) The ALJ found Dr. Juriga's and Dr. Inman's opinions to be "somewhat persuasive," since Plaintiff's prior mental status examination was within "normal limits," meaning that "the record support[ed] no more than moderate limitations." (*Id.* at 21.) The ALJ mentioned that Plaintiff testified that she gets along well with others and thus that she has only mild social limitations. (*See id.*)

The ALJ reviewed the opinion of Dr. Ravi, the state agency consultative examiner who reviewed the Record as of March 11, 2022, and believed it to be of "limited persuasion." (*Id.* at 22.) Dr. Ravi opined that Plaintiff had no limitations sitting or standing and "moderate limitations to bending, pushing, pulling, lifting, and carrying." (*See id.*) The ALJ, by contrast, concluded that Plaintiff had "medium exertional limitations based on positive lumbar spine x-ray and fibromyalgia diagnosis"; the ALJ determined that Plaintiff had no greater than medium limitations because she had elected conservative treatment, which had stabilized her conditions. (*Id.*)

26

The ALJ also considered the opinion of Dr. Putcha, the medical consultant who opined that Plaintiff's physical impairments would cause no more than mild limitations in her ability to function. (*See id*.) The ALJ found Dr. Putcha's opinion to be of "limited persuasion," given the ALJ's view that Plaintiff would have "medium exertional limitations based on positive lumbar spine x-ray and fibromyalgia diagnosis." (*Id*.) The ALJ concluded that Plaintiff had no greater than medium limitations because her medical conditions had been stabilized with conservative treatment. (*See id*.)

After reaching a conclusion about Plaintiff's RFC, the ALJ found at Step Four that Plaintiff was "unable to perform any past relevant work as a public relations representative," which was a skilled job. (*Id.* at 24.)

E.    Step Five

At Step Five, after considering Plaintiff's demographics and RFC, as well as the VE's testimony, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as hand packer, hospital cleaner, and laundry worker. Accordingly, the ALJ concluded that Plaintiff had not been under a disability since the date the application was filed on August 12, 2021. (*See id.* at 25.)

III.    **Analysis**

A reviewing court must decide whether the ALJ applied the correct legal standard. *See Calvello v. Barnhart*, No. 05-CV-4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008), *report and recommendation adopted*, 2008 WL 4449357 (S.D.N.Y. Oct. 1, 2008). If there was legal error, the reviewing court must assess whether the error was harmless. *See Townley*, 748 F.2d at 112. If there was no legal error, or if any such error was harmless, the reviewing

court must determine whether the ALJ's decision was supported by substantial evidence. *See id.* Setting aside the decision and remanding is appropriate where the record was not fully developed, or where any legal error was not harmless, or where the decision was not supported by substantial evidence. *See McClean v. Astrue*, 650 F. Supp. 2d 223, 226 (E.D.N.Y. 2009) (citing *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)).

Plaintiff raises two objections to the Commissioner's decision: (1) that the ALJ failed to properly evaluate the persuasiveness of the medical opinion of Dr. Ting, in that the ALJ (a) ignored or mischaracterized evidence of Plaintiff's disability and (b) neglected to address the supportability of Dr. Ting's opinion; and (2) improperly failed to account for Plaintiff's limitations in concentration, persistence, and pace in assessing Plaintiff's RFC**.** (*See* ECF 9, Pl.'s Br. at 6-17.) The Commissioner counters that substantial evidence in the Record supports the ALJ's determination; that the ALJ properly considered Dr. Ting's opinion, including supportability; and that the ALJ properly assessed Plaintiff's RFC. (*See* ECF 15, Commissioner's Opp. at 8-16.)

Having reviewed the parties' submissions, the Record, and relevant caselaw, I requested a letter brief from the Commissioner on whether the ALJ had (1) given proper consideration to Dr. Ting's status as a treating provider and (2) appropriately acknowledged the difference between someone operating at a basic functional level in a structured setting and someone who can meet the demands of sustained employment, *see, e.g., Steven M.W. v. Comm'r of Soc. Sec.*, No. 21-CV-0390 (LJL) (GRJ), 2022 WL 2669491 (S.D.N.Y. June 17, 2022), *report and*

*recommendation adopted*, 2022 WL 2669296 (S.D.N.Y. Jul. 11, 2022). (*See* ECF 17, Text Order.)[7]

The Commissioner timely filed the requested letter, taking the position that the ALJ

appropriately acknowledged Dr. Ting's status as a treating provider and that Plaintiff, unlike the

plaintiff in *Stephen M.W.,* was able to function independently outside the home, which

supported the conclusion that she could meet the demands of a work environment. (*See* ECF

18, Commissioner's Letter.)

      For the reasons set forth below, I conclude that the ALJ failed properly to consider Dr.

Ting's status as a treating provider and failed to consider whether Plaintiff's performance during

medical examinations and ability to carry out tasks of daily living accurately reflected her

capacity to meet the demands of sustained employment. I therefore respectfully recommend

that Your Honor should GRANT Plaintiff's motion and remand this matter for further

proceedings.

      A.    <u>The ALJ's Assessment of Dr. Ting's Medical Opinion</u>

      I begin by analyzing the threshold issue of whether the ALJ properly assessed the

medical opinions in the Record, and in particular Dr. Ting's opinion.

      Current SSA regulations require an ALJ to "consider all medical opinions in the record

and evaluate their persuasiveness, considering the factors outlined in the regulations and

---

[7]    If an ALJ's error would warrant remand, but such error is not raised in the briefing, a
district court may address the issue, sua sponte, where "ignore[ing] error merely because
Plaintiff's counsel did not squarely raise it would be inconsistent with the principles of justice
that this court is bound to uphold." *E.g., Kenneth H. G. v. Comm'r of Soc. Sec.*, No. 20-CV-1395
(GLS) (DEP), 2022 WL 658110, at *7 (N.D.N.Y. Feb. 7, 2022) (considering errors that were not
raised in the brief by the counseled plaintiff) (collecting cases), *report and recommendation
adopted,* 2022 WL 656790 (N.D.N.Y. Mar. 4, 2022).

specifically explaining, in all cases, how he assessed the supportability and consistency factors."

*Hernandez v. Kijakazi*, No. 21-CV-4918 (VF), 2023 WL 2207601, at *8 (S.D.N.Y. Feb. 24, 2023)

(quoting 20 C.F.R. § 416.920c(b)(2)). An ALJ must not only consider supportability and

consistency in evaluating medical source opinions but also must explain the analysis of those

factors in the decision. *See* 20 C.F.R. § 416.920c(b)(2); *see also Vellone*, 2021 WL 319354, at *6.

An ALJ's assessment of the consistency of a medical opinion with the record evidence is

inadequate when that assessment "ignores or mischaracterizes medical evidence or cherry-

picks evidence that supports [the ALJ's] RFC determination while ignoring other evidence to the

contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022).

    1.   The ALJ Failed Properly To Assess the Consistency of Dr. Ting's Opinion

Plaintiff argues that the ALJ's opinion relies on impermissible cherry-picking. (*See* ECF 9,

Pl.'s Br. at 9.) I agree, although for somewhat different reasons than the ones set forth in

Plaintiff's briefing.[8]

---

[8]    Plaintiff contends that the ALJ ignored evidence that: during Plaintiff's January 26, 2022 appointment with Dr. Gomes, Plaintiff was more tangential and circumferential than at her prior visit and asked for assistance with paperwork designed for Plaintiff to complete; that during Plaintiff's December 28, 2021 session with Therapist Wang, Plaintiff reported being stressed about her benefits application and embarrassed about her financial situation and exhibited great anxiety and tangential speech; and that Plaintiff presented with pressured speech and circumstantial, circumferential, and tangential thought processes. (*See* ECF 9, Pl.'s Br. at 9-10.) In fact, the ALJ recited Dr. Gomes' observations about the January 26, 2022 appointment, including that Plaintiff complained of anxiety and that she was "a bit more tangential and circumferential than at prior visit." (ECF 8, R. at 18.) The ALJ also set out Therapist Wang's observations about the December 28, 2021 session, including that Plaintiff reported feeling stressed about her application for benefits, that she was ashamed about receiving financial support from friends and relatives, and that she "presented with a great amount of anxiety and tangential speech." (*Id.* at 19.) It therefore is hard to conclude that the ALJ ignored this evidence that supports Dr. Ting's opinion. However, as set forth in the analysis that follows, I believe that the ALJ improperly rejected or discounted this evidence.

"The Second Circuit has recognized the particular value of treating source opinions when reviewing claims involving mental impairments." *Steven M.W.*, 2022 WL 2669491, at *6. Indeed, in *Flynn v. Commissioner*, 729 Fed. App'x 119, 121 (2d Cir. 2018), the Second Circuit explained that "[t]he treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." As Magistrate Judge Gary R. Jones recently explained, "[t]he opportunity to observe and treat the claimant constitutes important support for a medical opinion under the new medical opinion standard." *Steven M.W.*, 2022 WL 2669491, at *6. "Even though ALJs are no longer directed to afford controlling weight to treating source opinions . . . , the regulations still recognize the foundational nature of the observations of treating sources, and consistency with those observations is a factor in determining the value of any [treating source's] opinion." *Steven M.W.*, 2022 WL 2669491, at *6. "As the amended regulations note, [a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)).

The Commissioner argues that the ALJ here, unlike the ALJ in *Steven M.W.,* gave appropriate consideration to Dr. Ting's status as a treating provider; in support, the Commissioner points to the ALJ's reference to Dr. Ting as Plaintiff's "treating psychiatrist." (ECF 18, Commissioner's Letter at 2.) That the ALJ acknowledged that Dr. Ting was Plaintiff's treating psychiatrist does not mean that the ALJ properly assessed Dr. Ting's opinion in light of his opportunity to observe and treat Plaintiff. The ALJ found unpersuasive the opinion of Dr. Ting

and the opinions of Plaintiff's three other treating providers (Therapist Wang, Dr. Guo, and Dr. Gomes), based on the stability of Plaintiff's psychiatric symptoms with treatment; treatment notes reflecting improvements in Plaintiff's medical condition; Plaintiff's report that she had a busy schedule and carried out activities of daily living; her intact mental status examinations; and her lack of psychiatric hospitalizations. (*See* ECF 8, R. at 21-24.) The ALJ also stated that the record did not support Dr. Ting's conclusions (or the conclusions of Therapist Wang). (*See id.* at 21, 23.) The ALJ found the opinions of the three psychological/psychiatric consultants, only one of whom met Plaintiff, to be somewhat persuasive, based on Plaintiff's intact mental status exam from October 2021 and her testimony that she gets along well with others. (*See id.*)

The ALJ's citations to support a conclusion that Plaintiff's psychiatric symptoms were stable with treatment were to 1) Dr. Grassl's consultative evaluation (*see id.* at 20 (citing *id.* at 344)) and 2) Therapist Wang's report of an October 26, 2021 telephonic session, at which Plaintiff reported that her medication "worked great" at improving concentration (*see id.* at 19 (citing *id.* at 397)). However, Dr. Grassl met with Plaintiff on one occasion only in October 2021. As this Court has explained, because of the cyclical nature of mental health impairments, exacerbated by stressors, a complete picture of a claimant's mental health "cannot readily be achieved by a single consultative examination." *Bodden v. Colvin*, No. 14-CV-8731 (SN), 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015). And while the cited treatment notes from Therapist Wang from October 2021 do indicate that Plaintiff's psychiatric symptoms were stable at the time (*see* ECF 8, R. at 397), the notes beginning in November 2021 indicate "deteriorating memories and decreasing ability to concentrate," increased depression and anxiety, and performance of daily life activities on a "superficial" level only. (*Id*. at 357 (treating

psychotherapist's notes reporting a "change in condition").) Focusing on Therapist Wang's October 2021 notes without addressing the deterioration reflected in the notes from the very next month reflects impermissible cherry-picking.

The ALJ's citations to treatment notes that reflect improvements in Plaintiff's medical condition (*see id.* at 23 (citing *id.* at 379, 386) are inaccurate. The cited treatment notes make no mention of any improvements at all. (*See id.* at 379, 386.) It also is not entirely clear how improvements in Plaintiff's medical condition would be relevant to Plaintiff's psychological limitations.

While Plaintiff reported having a busy schedule and performing activities of daily living, the ALJ failed to consider whether the effects of Plaintiff's mental health conditions might be different in a work setting than in a non-work setting. *See, e.g., Steven M.W.,* 2022 WL 2669491, at *5; *Primo v. Berryhill,* No. 17-CV-6875 (LTS) (HBP), 2019 WL 2453343, at *13 (S.D.N.Y. Feb. 19, 2019) ("[T]he effects of a mental health issue may be different in a work setting than in a non-work setting, a fact expressly recognized in the Commissioner's regulations"), *report and recommendation adopted*, 2021 WL 1172248 (S.D.N.Y. Mar. 29, 2021). The Commissioner suggests that this query is unnecessary, arguing that Plaintiff here, unlike the plaintiff in *Steven M.W.,* functions independently outside the home, does not live with family, and performs activities of daily living. (*See* ECF 18, Commissioner's Letter at 2.) These observations indicate that Plaintiff can function in certain lower stress environments; these observations do not demonstrate that she is able to "complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. Subpt. P, App. 1 § 12.00(C)(6)(b). As this Court explained in a case presenting similar issues, *Rivera v. Commissioner*:

> [T]he ALJ reasoned that plaintiff's daily activities "are not limited to the extent
> one would expect, given the complaints of disabling symptoms and limitations."
> (R. 22-23.) These activities include that plaintiff "drives; is able to live by himself;
> has one friend; can cook eggs or hot dogs; listens to music at times and visits his
> sister." (R. 23.) He also "does laundry" and "takes out the garbage." (*Id*.) However,
> "[t]here is nothing inherent in these activities that proves Plaintiff has the ability
> to perform '[t]he basic mental demands of competitive, remunerative, unskilled
> work[, which] include the abilities (on a sustained basis) to understand, carry out,
> and remember simple instructions; to respond appropriately to supervision,
> coworkers, and usual work situations; and to deal with changes in a routine work
> setting[,]' SSR 85-15, much less to do so '8 hours a day, for 5 days a week, or an
> equivalent work schedule[,]' SSR 96–8p, 1996 WL 374184, at *2."

2020 WL 8167136, at *21 (citing *Harris v. Colvin*, 149 F. Supp. 3d 435, 445 (W.D.N.Y. 2016) and

*Polidoro v. Apfel*, No. 98-CV-2071 (RPP), 1999 WL 203350, at *8 (S.D.N.Y. April 12, 1999)).

Plaintiff's report that she had a full schedule, which included socializing frequently, and her

ability to perform certain tasks of daily life – driving, shopping, and managing her finances – do

not shed light on whether Plaintiff would be able to perform unskilled work on a sustained

basis, which would require her to, among other things, respond appropriately to supervision,

coworkers, and work situations, to deal with changes in a routine work setting, and to work

without taking too many breaks or being too frequently absent. *See id.*

    Nor does Plaintiff's intact mental status examination of record from October 2021 call

into question the persuasiveness of Dr. Ting's opinion. Dr. Grassl, who performed the mental

status examination of record and concluded that Plaintiff's mental status was intact, met with

Plaintiff on one occasion only, over Zoom. (*See* ECF 8, R. at 343.) The notes of Plaintiff's treating

providers also referred on occasion to Plaintiff's intact mental status. (*See, e.g.*, *id.* at 415

(noting mental status within normal limits based on Plaintiff's voice and session content but also

noting that because the session was telephonic, a visual assessment was not possible).) But the

Second Circuit has counselled against relying on mental status examinations to draw conclusions about a plaintiff's abilities in a work context because they are only analyzing the "mental state only at the time of the examination and do not consider symptoms the patient may experience outside of that brief period of time." *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022); *see also Bodden,* 2015 WL 8757129, at *9 (explaining that a complete picture of a claimant's mental health "cannot readily be achieved by a single consultative examination").

As to the ALJ's assertion that Dr. Ting's and Therapist Wang's opinions were unpersuasive because they were inconsistent with underlying records (*see* ECF 8, R. at 21, 23 (citing *id.* at 324, 332, 344-46), only Dr. Grassl's consultative opinion (*see id.* at 344-46) is inconsistent with the evaluations of Dr. Ting and Therapist Wang. On September 22, 2020, Plaintiff's screening for depression by Dr. Guo was negative (*see id.* at 324), which is not inconsistent with the conclusions by Dr. Ting and Therapist Wang that Plaintiff exhibited extreme and marked limitations in functioning over a year later –particularly given the "cyclical nature of mental health impairments," *Bodden,* 2015 WL 8757129, at *9. In a March 2021 summary of a telehealth visit with Dr. Gomes, Plaintiff reported feeling stressed and anxious and experiencing stomach pain. (*See* ECF 8, R. at 332.) I do not see how this treatment note is inconsistent with Dr. Ting's assessment; to the contrary, Dr. Gomes' observation that it was "difficult to elicit specific symptoms/characteristics due to pressured speech and circumferential/tangential responses" (*id.*) seems generally consistent with Dr. Ting's opinion.

It is true that the lack of prior psychiatric hospitalizations, along with one consulting source opinion from a professional who examined Plaintiff and two consulting source opinions

from professionals who only reviewed the Record, provide some support for the ALJ's decision.

However, given the ALJ's significant errors – failing properly to account for Dr. Ting's treating

provider status; failing to consider the deterioration in Plaintiff's psychiatric condition;

misreading treatment notes to find improvements in physical health where there were none

indicated; failing to consider whether benign findings during certain medical examinations and

an ability to carry out activities of daily life would translate into an ability to complete

employment-related tasks; and stating that certain medical records were inconsistent with Dr.

Ting's opinion when they were not – that support is insufficient to sustain the decision, even

under the deferential standard of review that applies here. "The new regulations cannot be

read as a blank check giving ALJs permission to rely solely on agency consultants while

dismissing treating physicians in a conclusory manner." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885

(D. Vt. 2021).

2. The ALJ Properly Addressed the Supportability of Dr. Ting's Opinion

In the event that Your Honor disagrees with my conclusion that the ALJ failed properly to

address the consistency of Dr. Ting's opinion with the Record, I turn to the question whether the

ALJ properly addressed the supportability of Dr. Ting's opinion. An ALJ's analysis of

supportability is insufficient if there is no explanation of how well the medical sources

supported their own opinions. In *Acosta Cuevas,* for example, the Court ordered remand for

failure to properly assess medical evidence when the ALJ neglected "to apply or even consider

the supportability factor." 2021 WL 363682, at *14. In that case, the ALJ never provided the

explanation required by current regulations of "what the respective [consultative examiners]

used to support their opinions and reach their ultimate conclusions." *Id.* The ALJ instead

discussed "some of the objective medical evidence in the record in comparison to the [consultative examiners'] opinions to determine if the evidence and opinions were consistent," *id.*, but as the Court explained, that discussion addressed consistency rather than supportability. *See id.* Plaintiff argues that the ALJ here took the same approach. (*See* ECF 9, Pl.'s Br. at 11-12.) I disagree.

It is true that, in the portion of the opinion where the ALJ concludes that Dr. Ting's opinion was unpersuasive, the ALJ did not address how Dr. Ting supported his opinion, focusing on the issue of consistency. (*See* ECF 8, R. at 23.) The ALJ stated that Dr. Ting's opinion was "not consistent" with the "underlying records," noting that Plaintiff reported that she had a busy schedule and carried out the activities of daily living, including socializing and caring for her daily needs; that her October 13, 2021 mental status examination was intact; that Plaintiff has never been hospitalized for her psychiatric condition; and that the treatment notes mention Plaintiff's improvements. (*See id.*)

The Commissioner concedes that in the portion of the opinion discussing the weight to assign Dr. Ting's opinion (*see id.*), the ALJ addressed the consistency of Dr. Ting's opinion with other record medical evidence but not the supportability of Dr. Ting's opinion. (*See* ECF 15, Commissioner's Opp. at 13.) Plaintiff argues that the ALJ's assessment of supportability was insufficient under the current regulations, pointing out that the ALJ did not cite to Dr. Ting's own treatment notes when weighing the persuasiveness of Dr. Ting's opinion, which Plaintiff maintains would be necessary to adequately consider supportability. (*See* ECF 9, Pl.'s Br. at 11-12.) The Commissioner responds that, while the ALJ did not explicitly address the supportability of Dr. Ting's opinion in the section setting out the ALJ's assessment of Dr. Ting's

opinion as unpersuasive, the ALJ did examine supportability elsewhere. (*See* ECF 15, Commissioner's Opp. at 13-14.) In particular, the ALJ noted that Plaintiff told Dr. Ting "that her mood was okay and her sleep and appetite were fine" and that she was "feeling less anxious since starting treatment." (ECF 8, R. at 19.) The Commissioner highlights that the ALJ explained that:

> "Dr. Ting further found that [Plaintiff] presented circumstantial, difficult to follow. However, Dr. Ting noted that [Plaintiff's] mood was euthymic and her concentration was good. Additionally, Dr. Ting assessed that [Plaintiff's] insight was normal and her judgment and impulse control were good. Dr. Ting recommended for [Plaintiff] to continue taking Abilify 5 mg and therapy." *See* Tr. 18-19 (internal citations omitted); *citing* Tr. 412-14."

(ECF 15, Commissioner's Opp. at 14 (quoting ECF 8, R. at 19).) The Commissioner concludes that this language reflects "implicit consideration of the supportability of Dr. Ting's opinion" and cites cases for the proposition that implicit consideration is sufficient. (ECF 15, Commissioner's Opp. at 14 (citing *Roane v. O'Malley*, No. 22-CV-10704 (AEK), 2024 WL 1357845, at *11 (S.D.N.Y. Mar. 29, 2024); *Tipograph v. Comm'r of Soc. Sec.*, No. 20-CV-9136 (MKV) (VF), 2022 WL 6564030, at *14 (S.D.N.Y. July 29, 2022), *report and recommendation adopted*, 2022 WL 4547407 (S.D.N.Y. Sept. 29, 2022); *Jennifer M. v. Comm'r of Soc. Sec.*, No. 21-CV-980 (GTS/ATB), 2022 WL 19003388, at *8 (N.D.N.Y. Nov. 18, 2022); *John W. v. Kijakazi*, No. 20-CV-1180 (BKS), 2022 WL 768672, at *13 (N.D.N.Y. Mar. 14, 2022)).)

Plaintiff counters that all the cases cited by the Commissioner are distinguishable. (*See* ECF 16, Plaintiff's Reply at 2-3.) She is correct that the two cases from the Northern District of New York, *Jennifer M.* and *John W.,* are distinguishable: *John W.*, unlike this case, expressly discusses how the relevant medical opinions was supported, 2022 WL 768672, at *13 (N.D.N.Y.

Mar. 14, 2022), and so *John W.* does not provide persuasive support for Commissioner's

position. *Jennifer M.* states that the source's prior assessments (on which the source

presumably relied in forming the medical opinion), did not support the medical opinion, 2022

WL 19003388, at *7-8 (N.D.N.Y. Nov. 18, 2022); that is not the case here, and so *Jennifer M.*

does not provide persuasive support for the Commissioner's position. However, Plaintiff's

efforts to distinguish the two cited cases from this District, *Roane* and *Tipograph,* miss the mark,

and the reasoning in those two cases is persuasive and applicable here.

Plaintiff argues that in *Roane,* the ALJ referenced the sources' review of the record and

their detailed assessments but that the ALJ here made no similar statement. (*See* ECF 16,

Plaintiff's Reply at 2-3.) This is an incorrect characterization of the ALJ's opinion in this matter.

The ALJ summarized Dr. Ting's treatment notes, which were the bases for his medical opinion

(*see* ECF 8, R. at 23), thereby demonstrating that the ALJ had implicitly considered the

supportability of Dr. Ting's opinion.

Plaintiff asserts that *Tipograph* is distinguishable because there, the ALJ provided a

detailed discussion of the medical evidence, showing that the ALJ had considered supportability.

But the ALJ here has provided a similarly detailed discussion of Dr. Ting's opinion, quoted in part

above.

Plaintiff points out that the ALJ discussed only one of Dr. Ting's sessions with Plaintiff

and contends that the ALJ failed to consider Dr. Ting's observations that Plaintiff was difficult to

follow and had vague, circumstantial thought processes. (*See* ECF 16, Pl.'s Reply at 3). But the

ALJ expressly mentioned those comments by Dr. Ting in the opinion. (*See* ECF 8, R. at 19.)

Plaintiff has not identified any medical evidence provided by Dr. Ting that went unmentioned

(and therefore unconsidered) by the ALJ. As was the case in *Tipograph,* the ALJ here considered supportability when deciding that Dr. Ting's opinion was unpersuasive.

Under the circumstances, the ALJ appropriately considered the supportability factor.

B.    <u>Improperly Assessing the Consistency of Dr. Ting's Opinion Is Not Harmless Error</u>

In the event that Your Honor agrees with the conclusion that the ALJ failed to appropriately assess the consistency of Dr. Ting's opinion, I consider whether that failure would be harmless error. I conclude that it would not.

The ALJ found that Plaintiff could perform certain jobs requiring unskilled work at a medium level of exertion. (*See id*. at 25.) That conclusion is inconsistent with Dr. Ting's opinion for at least two reasons. First, Social Security's Program Operations System Manual ("POMS") lists mental abilities that are critical to the performance of unskilled work. *See* POMS 25020.010(B)(3). Those abilities include maintaining regular attendance and being punctual; working in coordination with or proximity to others without being unduly distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and responding appropriately to changes in a work setting. *See id.* Dr. Ting opined Plaintiff had marked and extreme limitations in these areas of functioning. (*See* ECF 8, R. at 466-68). "A substantial loss of ability to meet any of the basic mental demands . . . would justify a finding of inability to perform other work even for persons with favorable age, education, and work experience." POMS 25020.010(A)(3)(b). Under these circumstances, a failure by the ALJ properly to evaluate the persuasiveness of Dr. Ting's opinion would not be

harmless error, because Dr. Ting's opinion would support a finding of disability. *See, e.g., Conklin v. Kijakazi*, No. 21-CV-8486 (JLC), 2023 WL 104829, at *14 (S.D.N.Y. Jan. 5, 2023) (finding that the ALJ's failure to properly evaluate an opinion prepared by a consultative psychiatric examiner was not harmless because, "[h]ad the ALJ given more credit to his opinion in her RFC determination, she might have concluded that [the plaintiff] was disabled").

Second, Dr. Ting opined that Plaintiff would be unable to work a full day without needing more than the allotted number or length of rest periods, although he did not quantify the amount of time she would likely be off task. (*See* ECF 8, R. at 467.) The VE testified that an individual who would be off task 15% of the workday would be unable to maintain employment. (*See id.* at 77.) If Your Honor agrees that the ALJ failed properly to assess the persuasiveness of Dr. Ting's opinion, the case should be remanded for further development of the Record about how much time Plaintiff would likely be off task. *See Sheldon v. Comm'r of Soc. Sec.*, No. 22-CV-3778 (AMD), 2023 WL 5417245, at *6 (E.D.N.Y. Aug. 21, 2023) (remanding to develop the record regarding the claimant's rates of off-task behavior and absence given his RFC).

C.    The ALJ Improperly Failed To Account for Plaintiff's
      Limitations in Concentration, Persistence, and Pace in the RFC Assessment

I turn next to the question whether the ALJ improperly failed to account for Plaintiff's limitations in concentration, persistence, and pace in assessing Plaintiff's RFC.

Plaintiff argues that the ALJ's assessment of her RFC was inconsistent with the ALJ's analysis at Step Three, in which the ALJ found that Plaintiff was moderately limited in the ability to concentrate, persist, or maintain pace. (*See* ECF 9, Pl.'s Br. at 17.) Plaintiff contends that the ALJ did not account for those moderate limitations in determining her RFC but should have

done so, and that the failure to do so is reversible error, because the Record does not establish that Plaintiff can perform unskilled work despite those limitations. (*See id.*)

The Commissioner counters that Plaintiff misunderstands the nature of the analyses at Step Three for mental impairments and in determining the RFC. The Commissioner argues that the factors considered at Step Three are only to be applied in determining the severity of the mental impairment and are not applied in assessing the RFC. (*See* ECF 15, Commissioner's Opp. at 11.) The Commissioner is correct on this point. *See Whipple v. Astrue,* 479 F. App'x 367, 369 (2d Cir. 2012) ("The regulations make clear that [the Step Three] factors are only to be applied in determining the severity of a mental impairment . . . not a claimant's RFC, which is relevant to the guidelines' fourth and fifth steps"). "[T]he special technique used at steps two and three . . . is not an RFC assessment at step four. The ALJ may take the same information finding a moderate limitation for paragraph B criteria and conclude that Plaintiff's functional capacity is not impaired by that moderate limitation." *Moss v. Comm'r of Soc. Sec.*, No. 21-CV-1352 (JCM), 2022 WL 4365349, at *16 (S.D.N.Y. Sept. 20, 2022) (citing *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014)).

That is precisely what happened here. The ALJ concluded at Step Three that Plaintiff had moderate limitations in concentrating, persisting, and maintaining pace. (*See* ECF 8, R. at 14.). In assessing Plaintiff's RFC, the ALJ determined that Plaintiff had the RFC to perform medium work, with some enumerated limitations, and that Plaintiff "is able to perform simple work-related decisions." (*Id.* at 15.) In explaining the basis for this conclusion, the ALJ observed that Plaintiff "would have severe psychiatric impairment with moderate limitations in concentrating, persisting or maintaining pace based on complaints of racing thoughts, tangential speech and

some vague speech" but that her "mental status examination[s] of record are within normal limits and thus, the record supports no more than moderate limitations." (*Id.* at 20.) The ALJ therefore did consider Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace; the ALJ found that Plaintiff's RFC was impaired due to those limitations and determined that Plaintiff could nevertheless perform medium work with some adjustments. (*See id.* at 20-21 (describing as somewhat persuasive state agency psychological consultant examinations and finding moderate limitations).)

Plaintiff takes the position that neither the RFC assessment nor the hypotheticals posed to the VE limited Plaintiff to performing "simple, routine tasks," which Plaintiff concedes would address her limitations in concentrating, persisting, and pace. (*See* ECF 9, Pl.'s Br. at 14.) Plaintiff contends that the only mental limitation specified by the ALJ was for the performance of "simple work-related decisions." (*Id.* at 16.). Plaintiff appears to be distinguishing between simple, work-related decisions and simple, routine tasks, arguing that the RFC suggests that Plaintiff could perform complex tasks even though she could make only simple decisions. (*See id.*) Plaintiff cites no caselaw to support such a distinction, and I do not believe that this distinction is warranted; I see no substantive difference between the ability to make simple decisions and the ability to perform simple tasks.

Even if such a distinction were warranted, the ALJ further limited Plaintiff's RFC by finding at Step Five that Plaintiff could perform unskilled work (*See* ECF 8, R. at 25.) Unskilled work needs little or no judgment to perform simple duties that can be learned quickly. *See* 20 C.F.R. § 404.1568(a). As such, unskilled work encompasses a limitation to making simple decisions (because it requires little or no judgment) and a limitation to performing simple tasks.

43

Unskilled work is therefore consistent with moderate limitations concentrating, persisting, or maintaining pace. *See Marrero v. O'Malley*, No. 22-CV-7982 (KMK) (AEK), 2024 WL 1435923, at *9 (S.D.N.Y. Feb. 14, 2024) ("The Second Circuit has held that moderate limitations in mental functioning are consistent with an RFC for unskilled work – the kind of work the ALJ found Plaintiff could perform."), *report and recommendation adopted*, 2024 WL 1328382 (S.D.N.Y. Mar. 28, 2024) ("[T]he law remains clear that ALJs are not precluded from finding claimants can perform unskilled work even where there is substantial evidence that they suffer from moderate limitations to their mental functioning.").

However, as discussed above, in determining that Plaintiff could perform medium work, with some enumerated limitations, the ALJ failed to consider whether the effects of Plaintiff's mental health condition might be different in a work setting than in a non-work setting. *See, e.g., Steven M.W.,* 2022 WL 2669491, at *5 (citing authority). While Plaintiff may be able to maintain concentration, persistence, and pace in certain lower stress environments, that ability does not demonstrate that she is able to "complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion should be GRANTED and that this matter should be remanded for reconsideration of the medical opinion evidence, incorporating appropriate appreciation of Dr. Ting's treating relationship with Plaintiff and careful consideration of whether and to what extent Plaintiff's ability to function in structured settings such as during brief medical appointments and in lower stress situations such as performing daily life activities is probative of her capacity to cope with the stress of

sustained activities in a work environment; as well as for development of the record regarding

Plaintiff's expected rates of off-task behavior and absences.

Dated: New York, New York
      January 28, 2025

                                        Respectfully Submitted,

                                        _____
                                        **ROBYN F. TARNOFSKY**
                                        **United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure to this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Liman.

THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).